# HUTCHINSON *v.* CAPITAL TRACTION COMPANY.

---

STREET RAILWAYS; NEGLIGENCE; CONTRIBUTORY NEGLIGENCE.

It is not the duty of a conductor of a street railway car about to stop at a regular stopping place to warn a passeneger about eighty-three years. old, who has left his seat for the purpose of alighting, not to do so until the car has stopped, unless there is something in the appearance or conduct of the passenger reasonably calculated to give the conductor notice of the helplessness of the passenger and his apparent intention of alighting before the car shall have stopped.

No. 2196. Submitted December 9, 1910. Decided January 3, 1911.

HEARING on an appeal by the plaintiff from a judgment of the Supreme Court of the District of Columbia, on verdict, in an action to recover damages for alleged personal injury.
                                                    *Affirmed.*

The Court in the opinion stated the facts as follows:

This is an appeal from a judgment for defendant, the Capital Traction Company, in an action for personal injuries received by a passenger of the street railway company.

The declaration alleges that plaintiff, William H. Hutchinson, was a passenger on defendant's car on the 14th street line on March 29th, 1908; that it was the duty of defendant to carry him safely, and allow him safely to leave the car at his destination; that when the car going south reached its regular stopping place near the corner of 15th and G streets, plaintiff, in the exercise of due care, sought to alight therefrom, and was violently thrown to the ground through the negligence of defendant's agents, and by reason thereof sustained serious and permanent injuries.

The evidence of plaintiff, testifying on his own behalf, tended to show that he had taken dinner with his daughter near the north end of the 14th street line, and gotten on the car about 8.30 P. M. on his way home, at 17th street and Pennsylvania avenue, intending to transfer to the avenue car west at 15th and G streets. Plaintiff was eighty-three years old, but healthy and active, and accustomed to riding on the cars alone and without assistance. He obtained a transfer ticket before reaching the transfer station. He made no effort to rise until sure the car had stopped. Slowly passed down the front car, passing the conductor about the center of the same. Saw the motorman looking back through the front window. He saw the west-bound train coming up, and started to it, but found a barrier. Wheeled about on the platform, went toward the exit, and looked in the car again. Saw the conductor and motorman in the same positions. Moved forward two steps, holding the stanchion, and stepped with his right foot on the step below. Had his left foot lifted in the air, and, quicker than a flash, was lying down under the edge of the car alongside the moving wheel. The conductor could not miss seeing him. Made no effort to rise from his seat in the car until positively sure it had stopped. Walked slowly to the platform. There

was no motion of the car until he was pulled over in a flash. The car started quick as a flash.

A written statement was read to him as signed by him, in which he said that he found the car had started while he was getting on the step. The car came to a stop within 2 feet. He said that he was recovering from unconsciousness when he signed it, with a room full of men, and it was not correct. He said that the car started as he was going down the last step.

Testimony on behalf of the defendant, consisting of the conductor and motorman, two passengers, and a man at the crossing, tended to show that the car was slowly coming to a stop at the regular stopping place when plaintiff got up and went on the platform. That it came to its stop from 12 to 18 inches from place where plaintiff stepped off. That it did not stop before that and start again. Testimony tended to show that immediately after the accident plaintiff said it was due to his own fault. The conductor testified that he was on the platform of the trailer when plaintiff undertook to step off. Observed no weakness about him. Did not warn him not to get off before the car stopped, as he had no reason to suspect that he contemplated doing so. There was nothing unusual in his appearance or conduct to attract special attention to him.

The court refused three special instructions asked by plaintiff, and gave one relating to the evidence concerning the statement signed by him.

At the request of defendant the jury were charged that the burden of proof was on plaintiff to show that defendant's car came to a stop and that while plaintiff was endeavoring to alight therefrom it started and caused his fall. This was excepted to. The court then gave a charge to the jury, to a part of which only plaintiff excepted. The objection to that part was that it eliminates as a factor in the case whatever of negligence the jury might find on the part of the defendant in not stopping, or saying anything to plaintiff as he was about to alight from the car. The jury returned a verdict for the

defendant, and judgment was entered thereon after motion for a new trial had been denied.

*Mr. Leonard J. Mather* for appellant.

*Mr. R. Ross Perry, Mr. R. Ross Perry, Jr.,* and *Mr. G. Thomas Dunlop* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

On the argument the appellant rested his case on the exception last noted above.

Upon the assumption that the plaintiff believed that the car had come to a stop, the contention is that it was the duty of the conductor to apprehend his intention to get off while the car was still in motion, and to warn him, or otherwise prevent his doing so.

In our opinion, this, under the circumstances of the case, extends the duty and liability of the carrier to an unreasonable extent, for which no precedent has been found.

It is a matter of common observation that many passengers leave their seats when a car is coming to a stopping place, and start to the door and platform with a view to getting out at the earliest possible moment; sometimes standing upon the step for the purpose.

Unless there be something in the appearance and conduct of the passenger, under such circumstances, reasonably calculated to give the conductor notice of the helplessness of the passenger and his apparent intention to leave the car before it shall have stopped, it would be unreasonable to expect him to stand at the door, and by word and act restrain the impatience of the passenger.

The conductor who, himself, knows that the car has not come to its expected stop cannot be expected to reasonably apprehend that a passenger firmly believes it has actually stopped, unless some special circumstances occur to indicate the fact.

It would be a very dangerous doctrine to permit a passenger, who is willing to testify to his belief, to impose upon the conductor the duty of correcting his mistake under ordinary circumstances, or in default thereof to render his employer liable in damages for any injury sustained.

A passenger in the possession of his faculties ought to know as well as anyone else when the car is moving, and when he undertakes to alight from it before it stops he takes the risk of injury, and must bear the consequences.

There was no error in the trial of the case, and the judgment will be affirmed, with costs. *Affirmed.*

On application of the appellant an appeal to the Supreme Court of the United States was allowed.